We'll move on to case number three, Merchants Bank v. Dave Craik et al. Good morning, your honors, and may it please the court. We're here this morning, on our appeal at least, for the efforts of my client, Merchants Bank, to enforce the plain language of a series of guarantees after a default on the mortgage for which those guarantees provided their guarantee. Let's see how many times I can say the word guarantee in the first sentence. The guarantee stated that we could proceed first. We didn't need to go through mortgage foreclosure. We didn't need to proceed against the borrowers. They made very clear that part of the deal under the guarantees is we could go against the guarantors. And the first filed suit was, in fact, the guarantee enforcement action that's in front of you. Merchants subsequently sought foreclosure of the two underlying properties in Tennessee and Arkansas. And this case is granted summary judgment sua sponsae for the grant, the guarantors, under a statute known as 3230.1010. I'm just going to refer to it as Section 10 for purposes of convenience today. And that statute, found in the provisions dealing with Indiana mortgage foreclosure actions, provides that in some instances a creditor can't proceed against a mortgagee. I'm sorry, I got it backwards. Mortgageor for an action when a mortgage foreclosure is pending. There's really four questions. And then a fifth issue of the request for our Indiana Supreme Court to hear the issue through your certification. The first issue is whether this statute applies at all to a guarantee as opposed to a mortgage. The second is, even if so, does the plain language of the statute prevent our lawsuit in this case? The third is whether the plain language of the guarantees waive this statutory provision or whether the language violates the statute. Or, and the last issue of the substance, is whether Indiana public policy would prevent the enforcement of that waiver. So I'm going to start with the statute itself. It doesn't use the word guarantee. It speaks only in terms of the protection given to mortgage. We have two subdivisions in the statute. We're proceeding in this case under Subsection 1. Subsection 1 says a plaintiff, that's us, may not proceed to foreclose on the mortgagee's mortgage while the plaintiff is prosecuting any other action for the same debt or matter that is secured by the mortgage. Now, nowhere in this series of statutes is the word guarantee. It's never been applied. Only more than a century that the statute's been on the books to prevent the enforcement of a guarantee. The district court's opinion was the first one to do so. By the plain language of the statute, it does not apply to this case. This case is not, and this is Subsection 1, a matter where we proceed to foreclose on the mortgagee's mortgage. Those are the actions. It has that vague language, matter. Why doesn't the guarantee fall within that umbrella? After all, it's all with the same transaction. I think the word matter, first of all, I would say that my colleagues on the other side have waived that issue. They don't defend this on the issue of matter. And that's why the second subsection of the statute doesn't apply. But I think it is a different matter because of the different legal theories, different controlling documents, the different parties involved. The underlying mortgagee parties are not even parties to this action. We have a governing different law. We have a different triggering event, right? When you have a guarantee, the triggering event isn't the enactment of the loan. It's the fact that the mortgager has failed to pay what was owed. So, I mean, when you guarantee the mortgage, you're not guaranteeing the loan. You're not a cosigner. What you are is you're guaranteeing the payment by the underlying borrower. And so we have a kind of different— It strikes me that the bank would like us to rewrite the statute to include an exception for guarantors that other states have put in their statutes. And the statute has been amended in fairly recent years, and there is no exception for guarantors. So what do you say to that argument? My response to that, Your Honor, is that the statute doesn't apply to guarantors in the first place. So there's no need for an exception. The way the plain language of it was written already contemplated that guarantors were not going to be involved, and partially because of the context that it's put in. If we wanted to restrict the rights of guarantors, there would be some language, and the language that my colleague on the other side uses is, well, it applies to all loan parties. The General Assembly could have done that, could have said that. They didn't. They focused instead on the underlying mortgagee and mortgagor relationship, the actual mortgage. And, in fact, in Section 1, it says that it's not just any other action or any other debt. It's the same debt or matter that is secured by the mortgage. So by focusing specifically on the mortgage, they've already ruled out the guarantors because my client. But there would be no guarantee without the mortgage. It's all part of the same kit and caboodle, no? But we're not. The guarantors are not parties to that mortgage. They don't have the mortgage foreclosure rights, the defenses, the rights to notice, all the things that are listed in this chapter of the Indiana Code that deals with mortgage foreclosure actions. And, in fact, the statute uses the term actions in that context. So it says we can't bring an action. And what it means is mortgage foreclosure actions, which is the topic of Chapter 10 of that provision's Indiana Code. In fact, it's called mortgage foreclosure actions. Your Honor, I'd be remiss not to say there is a much easier way and one that avoids larger principles, which is to say they've waived this argument. In two different places in the guarantees, they said that we can proceed directly against them and our right to proceed against them is not contingent on any other remedy provided. Now, they do make an argument in their brief kind of vaguely saying, well, you didn't say Section 10 specifically, but those waivers are much broader than that. They fully encompass this, and the district court agreed with this on this point. Where the district court departed from us is whether Indiana public policy under the Continental Basketball case that the Indiana Supreme Court handed down in 1996 and the framework of that case allowed us to proceed. That case really sets up, there's three levels of it, but there's two that are operative here. One is whether we're actually violating the statute by having these waivers, and the second is whether the waivers violate public policy, which is what the district court found. The district court decided it didn't need to decide, it was ambiguous on the first issue. But there is no violation of the policy here, the statute here. The statute doesn't say you can't have a contract that waives these rights. There's plenty of waivers that exist in the realm of lending and borrowing. In fact, we have statutes in Indiana, and I assume every other state, that also says there are certain types of rights you can't waive. Under Section 10, there's none of that type of language. And the Continental Basketball case says we have a very strong presumption against barring parties from contracting as they see fit. And we're only going to deviate that and find that a statute's violated if there's clear and unmistakable language in that statute preventing the enforcement of the contract. And it even gives us an example, kind of a communication between the court and the General Assembly saying the kind of language we're going to look for is if it's void or unenforceable. And there's obviously none of that type of language in Section 10. And so the argument from my colleague is that, well, Section 10 says you can't sue, can't bring an action if this other action on the same debt's pending, and so that's the end of the story. But that's not how the Continental Basketball case works. That case is saying that Section 10 confers a statutory right, and let's assume it's applicable to this case. Even if it is, that right can be waived. And so we have to determine whether the waiver of that violation, the waiver of that statutory right would itself be a violation of the statute. And there's nothing in the statute that suggests that at all. If the General Assembly wanted to communicate that, it would have included it. Has your client sold these properties yet? No, they are still not sold. And certainly that's what the record suggested up until the filings here. How are we to look at whether or not your client is mitigated? You're going after these guarantors, but I think part of what Section 10 is getting at is if you have multiple actions going on, I mean you still don't know what your mitigation efforts have done. What the properties are going to sell for. They're generating income now, correct? I don't know that that's in the record, and I don't know the answer to that question off the top of my head. I suspect it's no, but I don't want to represent something that's not true to the court. The problem with that argument is, again, they agree to this arrangement. Their agreement said you don't have to go through that process. You can pursue the guarantors to guarantee payment. So we have a quick, efficient way of recovering the amounts of load, which were very substantial in this case. Parties could have bargained for a different relationship. Go sell the property. You have to exhaust your remedies. All those types of things that could have been part of the bargain for exchange that were not here. And the ultimate choice there was between the parties, and what we're asking for here is a remand of the summary judgment specific as to Section 10. Those are all arguments about the scope of damages that could be determined on a remand. But if Section 10 is aimed at you, right? Your clients, right?  And not at other parties to a contract. If it's just saying your client can't do this, is it one of the reasons that it's trying to avoid these multiple litigations? It's cabineting you. You can go and have any agreement you want, but this statute is saying you don't have this right to have multiple actions like this. I think we have to come back to the Continental Basketball case on that. What the Supreme Court said is the General Assembly could do that. If it found a high enough public policy or a serious enough concern, it could say this is the rule and you can't waive around it. It just did not do that under the Continental Basketball framework. And one of the things that I'm sure my colleague will point out about the Continental Basketball framework is that in that case they suggested there was still a remedy. The state could get involved. There could be investigations, those types of things. And there's still a remedy here, Your Honor, which is we go back down on damages and if there's an issue about the scope, they can litigate it. If there's an issue about what the properties are going to sell for, they have claims against the borrowers they could bring. Those are all remedies they would have downstream. Unless there's any further questions. Actually, the foreclosure actions, tell me where they're at. The property is being marketed. There's a receiver. They have not been sold. They have not been able to sell the property. We're told it's our receiver and we're calling all those shots, but it's a court-appointed receiver that is a fiduciary to the courts in those two states. They are pending. They were second filed. This is the first filed case, but they are still pending. Thank you, Your Honor. Mr. Momberg, is it? May it please the Court, the district court's decision in this case was correct and it should be affirmed. It's been the law in Indiana since at least the 19th century that a mortgage lender may not simultaneously pursue money judgments and judgment of foreclosure of an underlying mortgage loan in separate cases at the same time. And that's exactly what we have going on here. The lender is attempting to get money judgments against the guarantors in this case. Enforcement of guarantees for the aggregate judgments would be around $25 million. While at the same time the properties are in foreclosures in Arkansas and Tennessee, out of state. Indiana has, it's been the law since the mid-19th century and the statute's been amended a number of times, but it's a controlling statute and it's a clear statute and the first issue in the case is one of statutory construction. It's simple and it's really the second part of the statute that applies. It says a plaintiff may not, too, prosecute any other action for the same matter while the plaintiff is foreclosing the mortgage loan, the mortgage or prosecuting a judgment of foreclosure. On its face that statute applies here. There are two separate actions pending and the statute itself is designed to make those actions mutually exclusive. It doesn't distinguish between, you know, commercial loans can be complicated so it doesn't distinguish exactly what type of action it would be. Money judgments, mortgage foreclosure, or some other type of statute. It also doesn't mention the various types of different kinds of loan parties. The word guarantors doesn't appear in the statute, but neither does words like borrower, maker of a note, grantor of a mortgage. None of that is in the statute. And what you see in the way the statute read in context is the first part deals with, essentially, this first section, you can't proceed to foreclose a mortgage while proceeding on a money judgment and you can't, the second part is you can't proceed to pursue a money judgment while at the same time foreclosing. It's exactly what the bank is attempting to do here. And that's what the bank was seeking to do below with the district court in seeking those judgments. The way the lender is trying to read the statute here would essentially render it meaningless. It clearly doesn't just apply to mortgage foreclosures. It has to apply to more than one type of action. In order to have mutually exclusive actions, you need at least one action for it to apply a mortgage foreclosure, which you have in here in Arkansas and Tennessee. And you need a second type of action, which is what we have here in district court. Indiana doesn't have one statute that governs all of mortgage foreclosures or all types of lending arrangements. It's sprinkled throughout through the Indiana codes. But at the end of the day, you have the same matter because we are dealing with the same mortgage loans. There are two different mortgage loans, two different cases. The Tennessee loan and the Arkansas loan. But in each case, you have one note and one guarantee. The policy reasons for the statute are pretty clear. Counsel, could you move on? Assume we agree with you on that issue of the plain language of the statute. Why didn't your clients waive this? Okay, so there's a few reasons why it's not waived here. And the first reason is if you look at the actual language in the guarantee agreements, nowhere does it say that the guarantors waive the bank bringing separate actions at the same time. It speaks to bringing the claims concurrently or bringing the claims consecutively. And the lender could have done that here. The lender could have sued on the guarantee and then sued on the foreclosure later or could have done the opposite or bring them both in the same case. But the waiver language in the guarantee never mentions the statute specifically, nor does it say that the guarantors waive the statute's prohibition against bringing the actions at the same time. The second thing, though, is that there is a public policy concern here where the court, the legislature, has said that the reasons are clear for this. They've been articulated already. But there's reasons not to have two separate actions pending at the same time. You can't, you're going to re-litigate the same issues in two different cases. There's going to be issues of damages in both cases. It causes the parties to defend cases in two separate forms, and it's wasteful. It does not promote judicial economy. The statute itself creates a prohibition against what the lender can do. I get that. I get that judicial economy argument, and I like judicial economy. But in terms of Indiana, you know, to avoid contractual provision as a matter of public policy is sort of a big thing to do, right? So what is your best case support for voiding this waiver and this guarantee on the grounds of public policy? Well, there can't be a stronger statement of what public policy is than to put it in a statute and have it be the law for the last. But there's lots of things in statutes. You know, what is the case support for the voiding here? What's the best case support? If you look at the Continental Basketball Association case, which the court cited, it is that you have public policy and there's not a clear waiver in the guarantees that you can, although the parties may be a commercial agreement and all of those things the parties indicate, but it's a prohibition against what the lender may do here. It doesn't necessarily confer a right upon the borrowers or guarantors. It's true it can be used to protect those guarantors in this case, but it's indicating within the mortgage foreclosure statutes and the real estate provisions that a lender is prohibited from doing this. If the court authorizes them to bring separate cases, there's no other way to enforce that right or support it than to indicate, to do what the legislator has said you cannot do, which is to bring two separate cases. So there's no guarantee agreements can be read without waiving. Do you acknowledge that there was a disparity in bargaining power here between the two? The parties are both commercial parties. It was commercial loan made for assisted living centers in both cases. The guarantor, the borrower, so it is a commercial loan. There would have been some of the factors in the Continental Basketball Association case, such as the bargaining power between the parties, would favor the bank here that they were both commercial parties. So the Applees don't contend that there wasn't equal bargaining power in this case. But the inquiry doesn't stop there where you have, under the Continental Basketball Association case, where you have a clear statement of public policy against what the party is attempting to do here in the statute itself. The guarantee agreements don't speak to this particular statute because they don't need to speak to this. You'd be trying to waive something that can't be waivable, which is essentially the Apple's position here, that the rights cannot be waived. Is this something you brought up or the court brought this up to respond to, correct? Yes. Well, first of all, it was brought up throughout the case. I mean, it was originally raised in affirmative defenses and in the case management orders throughout the case that the fact that there were these foreclosures pending out of state meant that the district court shouldn't litigate these cases and was raised as a defense. It was also raised as a defense to the motion for summary judgment that the separate actions could not be maintained. It's true there was not a cross motion for summary judgment brought at that time, but the defense itself that the two actions could not be maintained was raised. The district court went on to, we think, correctly say, well, there's a prohibition against bringing these mutually exclusive actions in two different forms at the same time. It's true. So, I mean, what we have is a controlling statute that's clear in the Continental Basketball Association case. The district court got the application of that right, that even if there is equal bargaining power between the parties on the commercial lender, that's not where the inquiries end. The factors are not necessarily the same. There is a public interest in supporting the statute that prevents these separate cases from being brought at the same time. I think if you look at the guarantee language, if the court looks at the guarantee language itself, what it speaks to is that cases can be brought. The different claims here, really, you have a claim for mortgage foreclosure and you have a claim against the guarantees. The relief sought is different. Against the guarantees, it's money judgment. Against the mortgage foreclosure, it's to foreclose the mortgages. Those could have all been brought in the same case, and the statute allows a lender to pursue just as the waiver and the guarantee allow, it allows a lender to bring one case and then the other, foreclose, then bring money judgment or money judgment and the guarantee, or the lender could have brought these cases all at the same time. The lender could have sued for foreclosure and guarantees in the same case, and they elected not to do that here. Instead, it brought these cases up separately. This is exactly, though, what the statute is intended to prevent, which because we do have a receiver in this case, the record shows that eventually after the mortgagors attempted to sell the property through bankruptcy proceedings and otherwise cooperated in turning the properties over to the bank's receiver. Now, the bank has claimed in this case that it doesn't actually control the receiver because the receiver is court-appointed. What the bank is neglecting to really realize here is that the receiver only exists because the bank initiated foreclosure proceedings in Arkansas and Tennessee separately. The bank, as part of that process, got the receivers appointed, picked which receivers to use, and then if the properties are sold through the receiverships or through a foreclosure, a judicially ordered foreclosure sale, those proceeds will come to the bank. So the bank controls the process here and the bank controlled the appointment of the receiver. That's been two and a half years now, and what this statute, besides judicial economy, which is one consideration, the protection it gives to the borrowers is that you can't tie up the properties in one case while seeking monetary relief in a whole other case and not get all those issues before the court in the same proceeding. These properties, the appraisals were submitted to the trial court. There's $25 million in debt that the bank is trying to collect here, and the collateral, they're mortgage loans. They're mortgage loans, and the main way that a mortgage loan would get repaid, $25 million in mortgage loans, is to get those properties sold so that the bank could have a recovery. Well, now they're in the control of a receiver, handed over and surrendered two and a half years ago, and they're tied up. That process has gone on with no sale or end in sight to it. So that's what this statute is attempting to prevent. Besides the issues of judicial economy, it's the situation where it becomes impossible for a borrower. Now a borrower or a guarantor or a loan party is defending cases in two different areas without some possibility of, without having all the issues before the same court, and while the properties can't be sold. The bank holds all the cards here. They've had the properties, and they're tied up. The bank is the one that controls how these properties are going to be disposed. Usually one would expect the foreclosure to be concluded by now. So there's been a long process of attempting to work the loan out. That's shown by the bankruptcy cases that happen at the level that the receiver getting appointed, that the guarantor is turning the properties over, but yet here we are now. Years later, and we still have two separate proceedings going on without a way of getting those properties sold. So I would just end with saying the case doesn't need to be certified. The district court got it correct. We have a controlling statute that clearly applies to these set of facts. The Continental Basketball Association, the result in that case can be distinguished because you had a court trying to interpret and apply franchise agreements with a franchise statute. Here you have a statute that prohibits the very action the lender is taking. It both creates rights and protections for a borrower and guarantor, but it also limits what the lender can do. There's nothing that the guarantors did here which somehow authorizes the bank to bring actions that are not authorized by the statute. They're mutually exclusive. For those reasons, we ask that the court affirm the district court decision. Thank you. Thank you, Counsel. Thank you, Your Honors. A lot I could say, but I think I'm going to fish where the fish are and start with the waiver issue. The argument that the guarantees didn't waive this, an argument rejected by the district court, is simply false. The plain language of the guarantees, first at paragraph 3 where it says we can proceed directly against the guarantor without exercising or exhausting any other right. The same paragraph says the liability of the guarantor is not conditional or contingent upon the exercise of any rights or remedies by the lender. Then further up, it says in paragraph 10E, the taking, suffering, or admitting to take any of the actions referred to or permitted by the lender in this guarantee or in any of the loan documents. All of those say, as the district court found, that we didn't have to exhaust the foreclosure process. The argument that the Continental Basketball case doesn't apply because in this case the statute prohibits the waiver, that's exactly what the Continental Basketball case did not say. In that case, it was very clear. It was concluded that the actions at issue violated the Indiana Franchise Act. So just like here, I'm assuming that the statute applies. We have the same exact situation, a violation of the statute. The real question is whether this is the type of statute that can be waived. In the Continental Basketball case, it set out the formula. It said, first of all, we start with a very strong presumption that the contract term is going to be... I always think of this like the great line in A Few Good Men. It's the strenuously object. It's kind of an interesting way of phrasing it from the Supreme Court. It then goes on to say, if the statute is going to waive it, you have to have clear, unambiguous intent. And third, we find that in language that says things like, it's void, it's unenforceable. That case predates the most recent enactment, which was in 1998, of Section 10. The General Assembly wanted to indicate that you couldn't surrender the right not to be sued first or sued simultaneously. It would have said so, and it did not. My colleague makes a public policy argument about how we don't want multiple suits and we shouldn't have this. That's all well and good, but the General Assembly thought differently and allowed these types of waivers. On top of that, I would say that they could have agreed differently. This is a bargain for exchange. There's these concerns about the delay involved. Part of that is because of the bankruptcy of the borrower entities. I see my time's just about up. If there's any further questions, I'd answer those instead of just continuing. But I thank you for your time and consideration today, Your Honors. Thank you, counsel. The case will be taken under advisement.